**RCO Legal, P.S.**
13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax: 425.458.2131
www.rcolegal.com

Honorable Judge Peter C McKittrick
Chapter 13

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re:

Steven J. Rudolf

Debtor.

Case No. 15-30534-pcm13

OBJECTION TO CONFIRMATION OF
PLAN DATED FEBRUARY 24, 2015
BY WELLS FARGO BANK, N.A., ITS
SUCCESSORS IN INTEREST, AGENTS,
ASSIGNEES, AND /OR ASSIGNORS

COMES NOW Wells Fargo Bank, N.A., its successors in interest, agents, assignees, and /or assignors, ("Creditor"), and objects to confirmation of Steven J. Rudolf's ("Debtor" collectively hereafter) proposed Chapter 13 plan filed February 24, 2015 (the "Plan").

### I.    BACKGROUND

On or about March 8, 2004, Steven J. Rudolf and Dorothy L. Rudolf executed and delivered a note in favor of Wells Fargo Bank, N.A. in the original principal amount of $63,000.00. This Note was secured by a Deed of Trust ('Deed') encumbering real property commonly described as 14704 NW Benjamin Ct., Portland, OR 97229 ('Property'). Copies of the Note and Deed of Trust are filed with this objection and labeled Exhibits A and B respectively. Creditor is the holder of the note or services the note for the holder.

The outstanding principal balance due on the Note as of filing was approximately $64,460.01. As of the same date the loan was contractually due for the November 2011 payment with a total estimated prepetition arrearage of $8,169.72 which includes payments, late charges, accrued fees and costs. Creditor's proof of claim with the exact amounts owing on the contract will be filed prior to the June 1, 2015 claims bar date.

RCO
Legal, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

1

2

## II.    AUTHORITY AND ARGUMENT

3

The Plan as proposed is not feasible under 11 U.S.C. § 1325(a)(6), as Debtor has failed to

4

demonstrate an ability to make all payments due under the plan.  Creditor objects to the proposed plan

5

because the plan makes no mention whatsoever of either Creditor's claim or how the Debtor proposes to

6

treat Creditor's claim during the proposed plan.  As a result, this plan is not feasible and should not be

confirmed.

7

The Plan does not comply with 11 U.S.C. § 1322 (b)(2), as it impermissibly modifies the rights of a

8

holder of a claim secured only by an interest in real property that is the Debtor's personal residence.

9

Failure to provide for Creditor's claim or pay the arrearages under the plan is an impermissible

10

modification of Creditor's rights and the plan should not be confirmed.

11

The Plan does not comply with 11 U.S.C. § 1322 (b)(5), as it does not provide for the cure of an

12

existing default within a reasonable time or require the maintenance of payments while the case is pending

13

on a secured claim on which the last payment is due after the date on which the final payment under the

14

plan is due.  As indicated above, the plan makes no mention of or provision for payment of the arrears.  The

plan should not be confirmed.

15

WHEREFORE, Creditor respectfully requests the Court deny confirmation of the proposed Chapter

16

13 plan.

17

DATED March 23, 2015.

18
**RCO LEGAL, P.S.**
ATTORNEYS AT LAW
19
Attorneys for Creditor

20

21
/s/ James Miersma OSB#021623 for
By: Eric Marshack, OSB #050166

22

23

24

25

26

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

The Honorable Judge Peter C McKittrick

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re:

Steven J. Rudolf

Debtors.

Chapter 13 Bankruptcy

No.: 15-30534-pcm13

CERTIFICATE OF MAILING

CERTIFICATE OF MAILING

I hereby certify under penalty of perjury under the laws of the State of Oregon that I mailed a true and correct copy of the Objection to Confirmation postage pre-paid, regular first class mail or via Electronic Message through Electronic Case Filing on the 23rd day of March, 2015, to the parties listed on the attached exhibit.

DATED this 23rd day of March, 2015.

/s/ Tony Chhay
Assistant to Attorney

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

1

2    Steven J. Rudolf
    14704 NW Benjamin Ct.
3    Portland, OR 97229

4    Nicholas J Henderson
    117 SW Taylor Street / Ste. 200
5    Portland, OR 97204
    nhenderson@portlaw.com
6

7    Chapter 13 Trustee
    Wayne Godare
8    222 SW Columbia St #1700
    Portland, OR 97201
9    c0urtmai1@portland13.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Certificate of Mailing – Exhibit
Page - 2

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

# Home Equity Access Line of Credit Agreement

| Borrower's name | Co-borrower's name |
|---|---|
| STEVEN J. RUDOLF | DOROTHY L. RUDOLF |
| Co-borrower's name | Co-borrower's name |

| Bank's name | Date | Account number |
|---|---|---|
| Wells Fargo Bank, N.A. | 3/8/2004   **APR 2 2 2004** | 214 |

In this agreement, I, ME and MY refer to each borrower and co-borrower who signs this agreement. YOU and YOUR refer to the Bank named above. This agreement covers my Home Equity Access Line of Credit with you, which is a revolving line of credit.

I understand that the date shown above is the date this agreement is prepared by you. This agreement is effective and is considered made when you approve my credit and accept it after I have properly signed it, subject to any right of rescission under federal law.

### Home Equity Access Line of Credit Loans
I may obtain a loan from this line of credit in person, by phone, by using any special draft you have given me, by cash withdrawal or transfer of funds using my Wells Fargo ATM Card or Wells Fargo ATM Card and Check Card, if service is available and if I select such service, or in other ways you authorize from time to time. The loan must be at least $ 300 ("Minimum Loan Amount").

If the amount available to borrow from this line of credit is less than the Minimum Loan Amount shown above, then you may, at your option, advance a loan for less than the Minimum Loan Amount.

### Credit Limit
My Home Equity Access Line of Credit is a revolving line of credit.

My credit limit is $ 63,000.00 . You do not have to give me any loan that would bring my unpaid balance over that limit. If you do make such a loan, any unpaid loan balance in excess of my credit limit ("Overline Amount") will be due with my next payment. I promise to pay you, when due, the unpaid loan balance, together with finance charges and other charges due on this line of credit.

### Maturity Date
This line of credit will mature on 3/20/2014 ("Maturity Date"). Until the Maturity Date, you agree to make the loans described above, subject to the terms of this agreement. I understand and agree that my unpaid loan balance, together with any unpaid finance charges and other charges, shall be payable to you in full on the Maturity Date, unless you agree to renew this agreement or refinance my loan balance, subject to my credit qualification at the Maturity Date.

### Finance Charges
A finance charge begins to accrue on the day each loan is made. You will charge me a FINANCE CHARGE on my unpaid loan balance at the end of each day at the daily periodic rate listed below:

☐ The Daily Periodic Rate is _____ %. This corresponds to an ANNUAL PERCENTAGE RATE of _____ %.

☒ The Daily Periodic Rate is a variable rate. It is equal to 1/365 (1/366 in leap years) of an annual rate of 0.900 % plus the "Index Rate." The Daily Periodic Rate may increase if The Highest Prime Rate Published in the Wall Street Journal "Money Rates" Table (the "Index Rate") increases. My initial Index Rate will be equal to the Index Rate in effect on the last day of the month prior to the month in which you receive and accept this agreement.

The Daily Periodic Rate in effect on the date shown at the top of this agreement is 0.01338798 %, which corresponds to an ANNUAL PERCENTAGE RATE of 4.9 %. The ANNUAL PERCENTAGE RATE will never be more than 18 %. and never less than 3.99 %.

The Daily Periodic Rate will be adjusted on the first day of every billing cycle using the Index Rate published on the last business day of the prior whole calendar month. Any increase will cause me to make larger monthly payments and/or a larger payment on the Maturity Date.

My finance charge for each monthly billing cycle is figured by multiplying my unpaid loan balance at the end of each day in the current billing cycle by the applicable Daily Periodic Rate and then adding the results together. My unpaid loan balance at the end of each day will reflect loans, payments and credits made that day. The Annual Percentage Rate does not include costs other than interest.

### Variable Feature: Automatic Payments

If this section is completed, I have chosen to have my regular minimum monthly payments on my line of credit, plus all Overlimit Amounts and Annual Fees automatically deducted from Bank Account No. _____ . I understand that the ANNUAL PERCENTAGE RATE above was based on a discount you gave me for this authorization for automatic payments from a deposit account. If the automatic payments are terminated for any reasons by anyone, the Daily Periodic Rate of FINANCE CHARGE on my line of credit will increase by _____ % effective the next business day after the automatic payments are terminated. I will receive 15 days advance notification of this change or a notice on my billing statement.

### Flood Zone
I agree to pay a flood zone determination fee of $ _____ when this line of credit is opened.

### Monthly Payments
To repay my loans, you will each month:
☐ provide me with a bill stating the total payment due. The total payment due includes my regular minimum monthly payment, together with any past due regular minimum monthly payment(s) and all other charges then due on my line of credit.

☐ automatically charge my Wells Fargo deposit account for my regular minimum monthly payment plus the Overlimit amount and the Annual Fee, if any. If this Account does not have enough money in it to make the automatic payment(s) you may, but are not required to, advance the necessary amounts from my line of credit to make the payments. (Any other charges due must be paid separately, and you will send me a bill for those amounts.)

☒ automatically charge my account with another institution (under the terms of a separate written (ACH) transfer authorization) for the regular minimum monthly payment(s) due plus any Annual Fee due. (Any other charges due must be paid separately.)

My regular minimum monthly payment will be calculated on the day my monthly statement is prepared and will be due on the date shown in that statement (which will be approximately 10 days after the day the statement is prepared.)

### Choice of Payment Due Date

My preference for my regular minimum monthly payment due dates, including all charges or other amounts due to you under this agreement, which may be set for any date between the 1st and the 28th days of each and every month, is 20 . If I do not choose a date, you may establish a due date for which is approximately 30 days from the date that I have signed this agreement and continuing on the same day of each month thereafter.

**Exhibit A**

## Monthly Payments

*Each regular minimum monthly payment will be the following amount (plus any Overline Amount):*

☐ a fixed amount of $ _____ .

☐ a payment that is equal to the greater of $ _____ or _____ % of my unpaid loan balance.

☒ a payment that is equal to the finance charge (and credit insurance premiums, if any) owing.

*These options will not fully repay the balance owing on this line of credit before the Maturity Date.*

### Final Payment

*I will be required to pay the unpaid loan balance, together with finance charges and other charges, outstanding on the Maturity Date in a "balloon" payment.*

### Other Charges

*I agree to pay the following other charges, which are described in greater detail on the back side of this agreement:*

| | |
|---|---|
| Over-the-credit-limit fee | $ _____ |
| Annual fee for first billing cycle | $ _____ |
| Annual fee for each succeeding year | $ 75.00 |
| Origination Fee | $ _____ |
| Origination Fee (Deferred) | $ _____ |
| Rate Cap Fee | $ _____ |
| Return payment fee | $ _____ |
| Stop payment fee | $ _____ |
| Amounts paid to others on my behalf: | |
| - to *public officials* | $ _____ |
| - to *credit report* | $ 18.00 |
| - to *mortgage Broker* | $ _____ |
| - to *broker Origination* | $ _____ |
| - to *attorney* | $ _____ |
| - to *document preparation* | $ _____ |
| - to *notary* | $ _____ |
| - to *courier* | $ _____ |
| - to *tax Servicing* | $ _____ |
| - to *processing* | $ 250.00 |
| - to *wire/Fax* | $ _____ |
| - to *underwriting* | $ _____ |
| - to *Appraisal Fee* | $ 75.00 |
| - to _____ | $ _____ |
| - to _____ | $ _____ |
| - to _____ | $ _____ |
| - to _____ | $ _____ |
| - to *settlement or closing* | $ 250.00 |
| - to *endorsement* | $ _____ |
| - to *servicers fee to record* | $ _____ |
| - to _____ | $ _____ |
| to *application* | $ _____ |
| to *admin* | $ 50.00 |
| to *loan tie in* | $ _____ |

### Fees:

*I am responsible for the payment of the following fees to you in connection with my line of credit:*

#### Deferred Origination Fee

[N/A] *If this box is checked, I agree to pay a $500.00 origination fee, which you have agreed to defer for 3 years. This fee will be due and payable in full at any time within the first 3 years of my line of credit if I close my Account (for any reason other than default, casualty loss, refinance with you or your affiliate, or termination by the Bank). After 3 years, you will waive this amount without any further action required on my part.*

#### FINANCE CHARGE Rate Buydown Fee

_N/A_ *If marked, I agree to pay you $_____ to receive a _____ % reduction in my Daily Periodic Rate of FINANCE CHARGE on my line of credit. This reduction is reflected in the Daily Periodic Rate of FINANCE CHARGE disclosed set forth on page 1.*

#### FINANCE CHARGE Rate Cap Fee

[N/A] *If marked, I have agreed to pay $_____ to you to receive a reduced maximum ANNUAL PERCENTAGE RATE on my line of credit equal to no more than 7.5 % plus the initial ANNUAL PERCENTAGE RATE 4.9 %, for a lower maximum ANNUAL PERCENTAGE RATE OF _____ % on my line of credit.*

### Late Fee:

*I also agree to pay a Late Fee if any regular minimum monthly payment is not paid in full within 10 days of its scheduled due date. The Late Fee will be equal to the greater of $ 5 or 5 % of the unpaid amount of the scheduled regular minimum monthly payment.*

### Security Interest

*To protect you if I am in default, the loans on this line of credit are secured by a real estate mortgage or deed of trust which is dated 3/8/2004 on the following property:*
14704 NW BENJAMIN CT
PORTLAND, OR 97229

*Collateral securing other loans with you may also secure these loans.*

### Property and Flood Insurance

*Property insurance on secured property:*

☒ *is* ☐ *is not required.*
*See next paragraph.*

*Flood insurance on the secured property:*

☐ *is* ☒ *is not required at this time.*
*See next paragraph.*

*During the term of this Agreement and any renewals or extensions thereof, I agree to maintain and provide you with proof of coverage of (i) standard property insurance covering damage to the secured property in an amount equal to the replacement cost of the secured property and (ii), if you notify me prior to the date of this Agreement that the secured property is located in a flood zone, flood insurance in an amount equal to the lesser of the amount of my credit limit or the maximum amount available under the National Flood Insurance Program. If you notify me that the secured property is in a flood zone after the date of this Agreement, I will obtain the flood insurance within 45 days of the date you notify me. I agree to obtain the required insurance from an insurance company acceptable to you and to furnish you with a mortgagee endorsement on origination and at each renewal of such insurance coverage. I understand that if I do not maintain the required insurance, in addition to your right to declare me in default, you have the right to purchase insurance coverage for your interest in the secured property only and add the premium for such insurance to the unpaid balance of my line of credit on which interest will accrue.*

### Change in Residence or Ownership of Property

*I agree to notify you immediately if: (1) I cease to live in the real property as my primary residence, or (2) there is any change in the ownership of the real property. I agree that the entire outstanding balance of my Note shall be due and payable immediately on any sale or other transfer of the real property. In this regard I understand that if my note is secured by a Deed of Trust, the Deed of Trust contains the following or a substantially similar provision:*

*Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Subject Property or any interest therein, then at its sole option Beneficiary or Lender may, by written notice or Trustor (Grantor), declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration for and in such particular circumstances where exercise of such right by Beneficiary is prohibited by law.*

*If the note is secured by a Mortgage, the Mortgage contains the following, or substantially similar provision:*

*Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary or by operation of law, of all or any part of the Subject Property or any interest therein, then as its sole option Mortgagee may, by written notice to Mortgagor, declare all obligations secured hereby immediately due and payable, except to the extent such acceleration for and in such particular circumstances where exercise of such a right by Mortgagee is prohibited by law.*

*You may change the terms of this agreement in accordance with the Change in Terms provisions on the back side of this agreement.*

### Credit Life and Disability Insurance

*You do not offer credit life and disability insurance on my line of credit.*

## Signatures of Borrower and Co-borrower

*I received and read a completed copy of this agreement before signing it.* ***The terms of this agreement replaces the terms of any prior oral or written agreements, including by way of example only, commitment letters, between me and you.*** *I understand and agree to all its terms, including those on pages 3 and 4. I also understand that page four of this agreement contains additional terms and important information regarding my rights to dispute billing errors.*

| | |
|---|---|
| X _Steven L. Rudolf_ | 3/07/04 |
| Borrower's signature    STEVEN L RUDOLF | Date |
| X _Dorothy L Rudolf_ | 3/7/04 |
| borrower's signature    DOROTHY L RUDOLF | Date |
| X | |
| borrower's signature | |
| X | |
| borrower's signature | |
| X | |

**The sections below apply regardless of where the bank is located, unless otherwise specified.**

### Default

You can terminate my Home Equity Access Line of Credit account and require me to pay you the entire outstanding balance in one payment if:

- I engage in fraud or material misrepresentation in connection with the line.
- I do not meet the repayment terms.
- My action or inaction adversely affects the collateral or your rights in the collateral securing this account, including, by way of example and not limitation: (a) failure to maintain required insurance on my dwelling; (b) my transfer of the property; (c) failure to maintain the property or use of the property in a destructive manner; (d) failure to pay taxes on the property; (e) causing or permitting a lien to be filed against the property that is senior to your lien; (f) my death; (g) the property is taken through eminent domain; (h) a judgment is filed against me and subjects me and the property to action that adversely affects your interest; or (i) a prior lien holder forecloses on the property and as a result, your interest is adversely affected.

### Your Rights If I Am in Default

If I am in default, you will notify me and, if applicable, give me notice of any right to cure that default when such notice is required by law. If I do not promptly cure the default or, if applicable, I do not cure the default within the time stated in the notice, you may demand that I pay you the unpaid loan balance, together with finance charges and other charges, outstanding on this line of credit. You may also use any other legal rights you have. However, you do not have to demand full payment right away. If you delay in enforcing any of your rights, you do not lose them. If I am in default, I agree to pay reasonable attorney's fees and other costs of collection, unless prohibited by law. You also can refuse to make further loans if I am in default. (If this line of credit is a joint account, I acknowledge that each borrower and co-borrower who signs this agreement is jointly and severally liable for the unpaid loan balance, finance charges and other charges outstanding under this agreement.)

### Your Right of Setoff

Unless this account provides overdraft protection for a checking account for which you have issued me a cash card you have the right of setoff. This means you have the right to take any money I have on deposit with you to pay any amounts I owe under this agreement.

### Restrictions

You can refuse to make additional loans on this line of credit or reduce my credit limit under this agreement if:

- The value of the dwelling securing this line declines significantly below its appraised value for purposes of the line.
- You reasonably believe that I will not be able to meet the repayment requirements due to a material change in my financial circumstances.
- I am in default of a material obligation in this agreement. This includes by way of example and not limitation, if I move out of my dwelling securing this agreement, if I permit an intervening lien to be filed that may take priority over your future advances, or if I materially misuse or mismanage this line of credit.
- Government action prevents you from imposing the annual percentage rate provided for or impairs your security interest such that the value of the interest is less than 120 percent of the credit line.
- A regulatory agency has notified you that continued advances would constitute an unsafe and unsound practice.
- The maximum annual percentage rate is reached.

### Termination Prior to Maturity

You can refuse to make further loans and terminate this line of credit if I am in default (and have not cured the default). I can terminate this line of credit at any time. (If this is a joint line of credit and either of us gives you notice of termination, this line of credit will terminate.) If you or I terminate the agreement, I cannot obtain further loans and I still will have to pay back my unpaid loan balance, finance charges and other charges.

### Annual Review

If you ask, I agree to provide you with current financial statements when you request such statements annually or otherwise from time to time. You will use these statements and other financial information available to you to review my financial condition. If you determine that my financial condition has deteriorated so that I no longer meet your credit standards, you will not permit further loans under this agreement.

### Other Charges

The following other fees and charges apply to this line of credit: (These fees and charges will be due and payable after the close of the billing cycle during which such fees and charges were assessed, on the same date as my **regular minimum monthly payment** for that billing cycle, as specified in the monthly statement you send me for that billing cycle.)

### Overlimit fee:

You will charge me the overlimit fee shown on page 2 of this agreement each time you, at your sole discretion, make any loan which (when added to my unpaid loan balance) exceeds my credit limit. (If law limits this fee to one fee per billing cycle or period, only one overlimit fee will be charged during such billing cycle or period.)

### Annual fee:

Each year my line of credit is open, whether or not I use it, a $75 nonrefundable Annual Fee will be charged to my account. The fee is waived the first year and billed in the second year and each succeeding year on the monthly billing statement prepared in my anniversary month.

### Return payment fee:

You will charge me the return payment fee shown on page 2 of this agreement for any check or other negotiable instrument made as payment on this line of credit which is returned unpaid for any reason or for any ACH transfer made as payment on this line of credit which is returned unpaid for any reason.

### Release/Reconveyance Fees

When my line of credit is paid off and closed, you will charge a fee in connection with the release/reconveyance of the Mortgage/Deed of Trust securing my line of credit or such other fee as permitted by law in connection with the satisfaction/reconveyance.

### Stop payment fee:

You will charge me the stop payment fee shown on page 2 of this agreement if I notify you to stop payment on any draft drawn directly on this line of credit.

The other charges described below "Amounts paid to others on my behalf" on page 2 of this agreement are payable when I sign this agreement, unless otherwise specified.

### Application of Payments

Regardless of the payment method, you may at your discretion, withhold a portion of the available credit on my line of credit up to the amount of any payments I make in order to assure that the check or other payment instrument is honored.

## Use and Management of Credit Line/ACH Termination

I agree that I will not misuse or mismanage this line of credit with you. If any ACH transfer for a payment is returned unpaid, you may terminate the ACH transfer authorization and bill me for future payments.

## Statements

The monthly statement you send me will include a record of my loans, charges, credits and payments made during the billing cycle covered by that statement. Unless I notify you within 60 days of the statement's closing date, you will assume that the statement is correct. The billing rights notice at the end of this agreement describes my rights and the method of giving notice.

## Stop Payment Terms

To be effective, a stop payment order ("order") must contain my name and account number, the number and exact amount of the draft, and the name of the person to whom the draft is payable, and it must be received in a time and manner that gives you a reasonable opportunity to act on it. An order will be in effect for six months; however, you reserve the right to remove an oral order after 14 days if I fail to confirm the order in writing within that time. I may renew an order in writing every six months. You may pay my draft after an order has expired even though the draft is more than six months old. You will have no liability to me if any of the information I provide in my order is incorrect and you pay the draft.

## Change in Terms

My Agreement with you permits you to make certain changes to the terms of this Home Equity Access Line of Credit account at specified times or upon the occurrence of specified events.

You can make insignificant changes such as changes in the address for payments, billing cycle dates, payment due dates, day of month on which index values are determined, index or interest rate rounding rules, and balance computation method (if the change produces insignificant difference in the interest I pay). You can also make changes that will benefit me, such as changes that offer me more options or a temporary reduction in fees or rates.

You can change the index and margin you use to determine the Annual Percentage Rate if the Index Rate (described on page 1 of this agreement) or any substitute Index (the "old index") is no longer available. The new index and margin you choose will result in an Annual Percentage Rate substantially similar to the rate that was in effect at the time the old index became unavailable. Unless the new index is newly established and, therefore, does not have historical rate history, the new index will also have a historic movement substantially similar to that of the old index. The Annual Percentage Rate on my account will continue to change monthly.

You can make any of the changes discussed above without my consent, unless state law provides otherwise. You will give me any notice of change that is required by law.

## Future Advances

You may from time to time in your sole discretion, approve additional credit for me under the terms of this agreement. I will receive written notice from you of such offer to increase my credit limit. I may accept such offer of increased credit by my use of those additional funds without signing any additional document. All such increased amounts will be governed by the terms and conditions of this agreement and will be secured by the Mortgage/Deed which secures this agreement.

## Tax Deductibility

I understand that I should consult my tax advisor regarding the deductibility of interest and charges on this Home Equity Access Line of Credit.

## Governing Law

All interest, fees and other amounts charged or accruing in connection with this agreement, which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC 85; 12 CFR 7.4001 (a)), shall be governed by and interpreted under California law. In all other respects, this agreement and all related documents, as well as the rights, remedies, and duties of the Bank (you) and the borrower(s) (I,us), shall be governed and interpreted by federal law with respect to national banks and to the extent not pre-empted by federal law, the consumer protection laws of the state in which the real estate collateral is located.

## My Billing Rights

I SHOULD KEEP THIS NOTICE FOR FUTURE USE.

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

I SHOULD NOTIFY YOU IN CASE OF ERRORS OR QUESTIONS ABOUT MY STATEMENT.

If I think my statement is wrong, or if I need more information about a transaction on my statement, I will write you on a separate sheet at the address you have given me. I will write you as soon as possible. You must hear from me no later than 60 days after you sent me the first statement on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I will give you the following information;
- my name and account number;
- the dollar amount of the suspected error;
- a description of the error and an explanation, if possible, of why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized you to pay my credit card bill automatically from my savings or checking account, I can stop the payment of any amount I think is wrong. To stop the payment, my letter must reach you three business days before the automatic payment is scheduled to occur.

MY RIGHTS AND YOUR RESPONSIBILITIES AFTER YOU RECEIVE MY WRITTEN NOTICE. You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, or within 30 days if the Bank is in Minnesota, you must either correct the error or explain why you believe the statement was correct.

After you receive my letter, you cannot try to collect any amount I question or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my statement that are not in question.

If you find that you made a mistake on my statement, I will not have to pay any finance charges related to the questioned amount. If you did not make a mistake, I may have to pay finance charges and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe you, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my statement. You must also tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you do not follow these rules, you cannot collect the first $50 of the questioned amount, even if the statement was correct. SPECIAL RULE FOR CREDIT CARD PURCHASES. If I have a problem with the quality of property or services that I purchased with a credit card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
(a) I must have made the purchase in my home state or, if not in my home state, within 100 miles of my current mailing address; and
(b) The purchase price must have been more than $50.00.

These limitations do not apply if you own or operate the merchant, or if you mailed me the advertisement for the property or services.

If I am a resident of North Dakota, the following notice will apply:

NOTICE TO NORTH DAKOTA BORROWERS, COBORROWERS, AND COSIGNERS (GUARANTORS).

(As used in this notice only, PROMISOR and PROMISORS refer to each Borrower, Coborrower, and Cosigner (Guarantor) under this agreement, which is referred to as the PROMISSORY NOTE.)

THIS PROMISSORY NOTE MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**Wells Fargo Bank, N.A.**

DATE OF NOTE/AGREEMENT: 3/8/2004
ACCOUNT:
REFERENCE:

## Addendum to Promissory Note/Line of Credit Agreement

This Addendum, made on 3/8/2004          is incorporated into and shall be deemed to amend and supplement the promissory note/line of credit agreement of the same date.  If the promissory note/line of credit agreement is signed on or after February 20, 2004 the Governing Law Provision included in either the promissory note/line of credit agreement (including the promissory note/line of credit agreement in the Home Equity Closing Handbook, if applicable) is amended to read:

"All interest, fees and other amounts charged or accruing in connection with this Agreement which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001 (a)) shall be governed by and interpreted under South Dakota law.  In all other respects, this Agreement and all related documents, as well as the rights, remedies, and duties of the Bank and the borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located, except that Texas Finance Code Chapter 346 (which regulates certain revolving credit accounts) does not apply to this Agreement."

In all other respects and except as amended by this Addendum, the promissory note/line of credit agreement remains unchanged and in full force and effect.

| | |
|---|---|
| BORROWER STEVEN J RUDOLF | 3/17/04 DATE SIGNED |
| BORROWER DOROTHY L RUDOLF | 3/17/04 DATE SIGNED |
| BORROWER | DATE SIGNED |
| BORROWER | DATE SIGNED |
| BORROWER | DATE SIGNED |
| BORROWER | DATE SIGNED |
| BORROWER | DATE SIGNED |
| BORROWER | DATE SIGNED |

DATE OF AGREEMENT:   3/8/2004                    **REFERENCE #:**
                                                 **ACCOUNT #:**

## NOTICE OF FINAL AGREEMENT AND ARBITRATION AGREEMENT

**Resolving Disputes - Arbitration Agreement**
In this Arbitration Agreement, "the Bank" means  Wells Fargo Bank N.A.                    or any transferee of the Agreement
or Note as applicable, and "I", "me", and "my" means the undersigned customer or customers, individually and jointly.
Maintaining good relationships with customers is very important to the Bank.  I agree to contact the bank immediately if I
have a problem with one of my accounts or loans with the Bank or a service the Bank provides to me.  Often a telephone call
will resolve the matter quickly and amicably.  However, if the Bank and I are not able to resolve our differences informally,
I agree that any dispute between me and the Bank, regardless of when it arises or arose, will be settled, at the option of
me or the Bank, using the following procedures.

I UNDERSTAND AND AGREE THAT I AM WAIVING MY RIGHT TO JURY TRIAL, BEFORE A JUDGE IN A
PUBLIC COURT.  FURTHER, I WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR
MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY DISPUTE SUBJECT TO ARBITRATION.

NOTICE: THIS DOCUMENT AND ALL OTHER DOCUMENTS RELATING TO THIS LOAN CONSTITUTE A
WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND
MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL
AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES
RELATING TO THE LOAN CLOSED ON THE SAME DATE AS THIS AGREEMENT IS SIGNED.

**Disputes**
A dispute is any unresolved disagreement between the Bank and me that relates in any way to accounts, loans with the
Bank, services provided by the Bank, or agreements with the Bank.  A dispute includes any claims or controversy of
any kind, which arises out of or are in any way related to these accounts, loans, services or agreements.  It includes
claims based on broken promises or contracts, tort (injury caused by negligent or intentional conduct), breach of
fiduciary duty or other wrongful actions.  It also includes any statutory common law and equitable claim.  A dispute
also includes any disagreement about the meaning of the Arbitration Agreement and whether a disagreement is a "dispute"
subject to binding arbitration as provided for in the Arbitration Agreement.  No dispute may be joined in arbitration
with a dispute of any other person or arbitrated on a class action basis.

**Binding Arbitration**
Binding arbitration is a means of having one or more independent third parties resolve disputes without using the court system,
judges or juries.  Either the Bank or I may submit a dispute to binding arbitration at any reasonable time notwithstanding that
a lawsuit or other proceeding has commenced.  If either the Bank or I fail to submit to binding arbitration following a
lawful demand, the party who fails to submit shall bear the costs and expenses incurred by the party compelling arbitration.
**Neither you nor I shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include
in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest
of the general public or in any private attorney general capacity.**

The American Arbitration Association (the AAA) shall administer each arbitration, including the selection of arbitrators,
pursuant to the commercial arbitration rules of the AAA.  Each arbitration will be governed by the provisions of the
Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is applicable,
unenforceable or invalid, the laws of the state governing the relationship between me and the Bank about which the dispute
arose.  To find out how to initiate arbitration, I can simply call any office of the AAA.

**Exception - Certain Real Property Collateral**

Notwithstanding contrary provisions herein, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured by real property and if arbitration of the dispute would preclude enforcement of a mortgage, lien or security interest securing such indebtedness unless (1) the holder of such mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (2) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of any applicable one action rule statutes, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing any such indebtedness and obligations, shall remain fully valid and enforceable.

**Right To Other Remedies Preserved**

Neither this Arbitration Agreement, nor the exercise of any of the rights the Bank and I have under the Agreement, shall stop me or the Bank from exercising any lawful rights either of us has to use other remedies available for the purpose of (1) preserving, foreclosing, or obtaining possession of real or personal property; (2) exercising self-help remedies including setoff and repossession rights; or (3) obtaining provisional or ancillary remedies such as injunctive relief, sequestration, attachment, garnishment, or the appointment of a receiver from a court having jurisdiction.

**Miscellaneous**

The AAA - the arbitrator - and the parties - the Bank and I - shall, to the extent feasible, take any action necessary to assure that an arbitration proceeding hereunder is furnished within one hundred eighty (180) days of the filing of the dispute with the AAA. Arbitration proceedings shall be conducted in the state in which I reside, at a location determined by the AAA. All statutes of limitations applicable to any dispute shall apply to any arbitration between the Bank and me. If a claim is properly filed in a small claims or justice court and if the small claims or justice court has jurisdiction to resolve the claim, including all cross-claims and counterclaims, then the party that demands arbitration and removes the claim from the small claims or justice court shall pay the administrative fee of the AAA and the fees, cost and expenses of the arbitrator. This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or any relationship between the parties.

**Judicial Reference (California Only)**

If California law governs this Arbitration Agreement and an action or proceeding is commenced by complaint before any court in California and neither I nor the Bank request that the dispute be submitted to arbitration, then, upon motion by either the Bank or me, the dispute shall be heard by a reference under the provisions of the California Code of Civil Procedure, Section 638 and following. The referee shall be either a practicing attorney or retired judge. The reference process is not subject to a trial by jury.

LENDER:
Wells Fargo Bank N.A.


By: _____     3/8/2004
                                                   Date Signed

CUSTOMER(S):

_____     3/11/04
Customer  STEVEN J. RUDOLPH                    Date Signed

_____     3/17/04
Customer  DOROTHY L. RUDOLPH                   Date Signed


_____     _____
Customer                                       Date Signed


_____     _____
Customer                                       Date Signed


_____     _____
Customer                                       Date Signed


_____     _____
Customer                                       Date Signed


_____     _____
Customer                                       Date Signed


_____     _____
Customer                                       Date Signed

3/3



Washington County, Oregon    **2004-029270**
03/23/2004 02:58:05 PM
D-M        Cnt=1  Stn=22  I REED
$55.00 $6.00 $11.00 - Total = $72.00

0055227520040028270011017

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.
                        Jerry Hanson
Jerry R. Hanson, Director of Assessment and Taxation,
                Ex-Officio County Clerk

Until a change is requested all tax statements shall be sent
to the following address.

Return Address:
Wells Fargo Bank N.A.
Wells Fargo Services Co.
Consumer Loan Servicing Center
P.O. Box 31557
Billings, MT 59107-9900

**TAX ACCOUNT NUMBER**

████████████

—————— State of Oregon —————— Space Above This Line For Recording Data——————

REFERENCE #:                    ACCOUNT #:

## LINE OF CREDIT DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Line of Credit Deed of Trust ("Security Instrument") is
   8     March     2004     and the parties are as follows:

   TRUSTOR ("Grantor"):
   STEVEN J. RUDOLPH, DOROTHY L. RUDOLPH, AS TENANTS BY
   THE ENTIRETY

   whose address is: 14704 NW BENJAMIN CT, PORTLAND, OR  97229

   TRUSTEE: Wells Fargo Financial National Bank
            c/o Specialized Services, 401 W. 24th St., National City CA
            91950

   BENEFICIARY ("Lender"):
            Wells Fargo Bank N.A.
            420 Montgomery Street
            San Francisco, CA  94104

**Exhibit B**



2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of Washington , State of Oregon, described as follows:
See attached Exhibit A

Lot 28

with the address of 14704 NW BENJAMIN CT, PORTLAND, OR 97229

and parcel number of 1N120DD 02800 together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument will secure shall not exceed $ 63,000.00 together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is 3/20/2014 .

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of the promissory note, revolving line of agreement, contract, guaranty or other evidence of debt dated 3/8/2004 , together with all amendments, extensions, modifications or renewals. The maturity date of the Secured Debt is 3/20/2014 .
   B. All future advances from Lender to Grantor under such evidence of debt. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances which exceed the amount shown in Section 3. Any such commitment must be agreed to in a separate writing.
   C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

Order No. ███████████

2004-29270

### EXHIBIT "A"
### Legal Description

Lot 28, KAISER RIDGE, in the County of Washington and State of Oregon.




8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property, or any part thereof or interest therein, whether senior or subordinate hereto, when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Upon sale, transfer, hypothecation, assignment or encumbrance, whether voluntary, involuntary, or by operation of law, of all or any part of the Property or any interest therein, then at its sole option Lender may, by written notice to Grantor, declare all obligations secured hereby immediately due and payable, except to the extent that such acceleration and in such particular circumstances where exercise of such a right by Lender is prohibited by law.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will not remove or demolish the Property, or any part thereof. Grantor will keep the Property free of noxious weeds, grasses and public nuisances. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's options, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties when Lender or Trustee takes affirmative active prescribed by law, and that this assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable



landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the property is a unit in a Condominium Project or is part of a Planned Unit Development ("PUD"), Grantor agrees to the following:

   A. **Obligations.** Grantor shall perform all of Grantor's obligations under the Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Projects or PUD and any homeowners association or equivalent entity ("Owners Association"); (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Grantor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

   B. **Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project or PUD which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then Grantor's obligation under Section 19 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Grantor shall give Lender prompt notice of any lapse in required hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to Property, whether to the unit or to common elements, any proceeds payable to Grantor are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to Grantor.

   C. **Flood Insurance.** Grantor agrees to maintain flood insurance for the life of the Secured Debt which is acceptable, as to form, amount and extent of coverage to Lender.

   D. **Public Liability Insurance.** Grantor shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender

   E. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Grantor in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 18.

   F. **Lender's Prior Consent.** Grantor shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management by the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

   G. **Remedies.** If Grantor does not pay condominium or PUD dues and assessments when due, then Lender may pay them. Any amount disbursed by Lender under this section shall become additional debt of Grantor secured by this Security Instrument. Unless Grantor and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Secured Debt rate and shall be payable, with interest, upon notice from Lender to Grantor requesting payment.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any



person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.



2004-29270

    C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be paid to Lender and applied to the sums secured by this Security Instrument, whether or not due, with any excess paid to Grantor. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires or is required by applicable law. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. If Lender determines at any time during the term of the Secured Debt that the Property securing the Secured Debt is not covered by flood insurance or is covered by flood insurance in an amount less than the amount required by law, Lender will notify Grantor that Grantor should obtain flood insurance at Grantor's expense. If Grantor fails to obtain adequate flood insurance which is acceptable to Lender, Lender shall purchase flood insurance on Grantor's behalf. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY, CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this

2004-29270

Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument. In the event any section of the Secuity Instrument directly conflicts with any section of a certain revolving line of credit agreement or promissory note referenced in Section 4, the terms and conditions of the revolvling line of credit agreement or promissory note (as applicable), the arbitration agreement and the agreement to provide flood/property insurance, all of which the Grantor agess to by signing this Security Instrument, the terms and conditions of said documents and not the Security Instrument shall control.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or as shown in Lender's records, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors.

26. **WAIVERS.** In the event Grantor is not also the borrower, customer or obligor (all referred to as "Borrower") under the Secured Debt:

   (i) Grantor represents and warrants to Lender that this Security Instrument is executed at the request of the Borrower; Grantor will not, without prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer or otherwise dispose of all or substantially all of the Property; and Grantor has established adequate means of obtaining from Borrower, on a continuing basis, financial and other information pertaining to the financial condition of Borrower. Grantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect the risks of Grantor, and Grantor further agrees that Lender has no obligation to disclose to Grantor information or material acquired in the course of Lender's relationship with Borrower.

   (ii) Grantor hereby waives any right to require Lender to proceed against any person, including Borrower; proceed against or exhaust any collateral held from Borrower or any other person; pursue any other remedy in Lender's power; or make any presentments, demands for performance or give any notices of nonperformance, protests, notices of protest of dishonor in connections with the Secured Debt and this Security Instrument.

   (iii) Grantor also waives any defense arising by reason of any disability or other defense of Borrower or any other defense of Borrower or any other person; the cessation from any cause whatsoever, other than payment in full of the obligations of Borrower under this Security Instrument and Secured Debt; the application by Borrower of the proceeds of the Secured Debt; for purposes other than the purposes represented by Borrower to Lender or intended or understood by Lender to Grantor; any act or omission by Lender which directly or indirectly results in or aids the discharge of Borrower by operation of law or otherwise, including any impairment or loss of any right of reimbursement or subrogation or any right or remedy of Grantor against Borrower or any against any security resulting from the exercise or election of

any remedies by Lender, including, without limitation, election by Lender to exercise any of Lender's rights, now or hereafter obtained, under any power of sale set forth in any security instrument securing repayment of the indebtedness of Borrower and the consequent loss, limitation or impairment of the right to recover any deficiency from Borrower in connection therewith or due to any fair value limitations or determinations in connection with a judicial foreclosure; or any modification of the Secured Debt in any form whatsoever, including, without limitation, the renewal, extension, acceleration or other change in time for payment or any increase in the rate of interest. Until all amounts secured shall have been paid in full, Grantor further waives any right to enforce any remedy which Lender now has or may hereafter have against Borrower or any other person and waives any benefit of, or any right to participate in, any security whatsoever now or hereafter held by Lender.

(iv) Grantor acknowledges, warrants and agrees that each of the waivers set forth in this section are made with the full knowledge of their significance and consequence and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of said waivers are determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law

27. **STATEMENT OF CONDITION.** From time to time, as required by law, Lender shall furnish to Grantor or its agent such statements as may be required concerning the condition of the Secured Debt. Lender will charge a fee for such statement equal to $60 or such other fee as may be permitted by law.

28. **RECONVEYANCE.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and any note or instrument evidencing the Secured Debt to the Trustee. Trustee shall reconvey, without warranty, the Property or that portion secured by this Security Instrument. To the extent permitted by law, the reconveyance may describe the grantee as "the person or persons legally entitled thereto." Neither Lender nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance. Lender will charge a fee for such reconveyance equal to $65 or such other fee as may be permitted by law.

29. **OTHER TERMS.** If checked, the following shall be incorporated into and shall amend and supplement the covenants and agreements of this security instrument:

☐ Additional Terms:

 Case 15-30534-pcm13    Doc 28    Filed 03/23/15

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

_____ 3/17/04      _____ 3/17/04
Grantor STEVEN J. RUDOLPH F       (Date)        Grantor DOROTHY L. RUDOLPH F       (Date)

_____                    _____
Grantor                          (Date)        Grantor                          (Date)

_____                    _____
Grantor                          (Date)        Grantor                          (Date)

_____                    _____
Grantor                          (Date)        Grantor                          (Date)



2004-29270

**ACKNOWLEDGMENT:**
(Individual)

STATE OF <u>OR</u> _____ , COUNTY OF <u>Washington</u> _____ } ss.

This instrument was acknowledged before me on _____ by
STEVEN J. RUDOLPH, DOROTHY L. RUDOLPH

*Christine Mabray*
(Signature of notarial officer)

*notary*
Title (and Rank)

My Commission expires: *May 1, 2006*

(Seal)



OFFICIAL SEAL
CHRISTINE MABRAY
NOTARY PUBLIC - OREGON
COMMISSION NO. 357385
MY COMMISSION EXPIRES MAY 1, 2006